**PENNINGTON COUNTY, a political subdivision of the State of South Dakota, Plaintiff and Appellant,**

v.

**Russell MOORE and Francis Moore, Defendants and Appellees.**

**No. 18657.**

Supreme Court of South Dakota.

Considered on Briefs Oct. 19, 1994.

Decided Dec. 14, 1994.

Ronald D. Buskerud, Pennington County Deputy State's Atty., Rapid City, for appellant.

Franklin J. Wallahan and Heidi L. Towne, Wallahan, Banks & Eicher, Rapid City, for appellees.

MILLER, Chief Justice.

Appellant Pennington County (County) appeals the trial court's ruling that zoning ordinances enacted by County since 1970 are invalid and unenforceable due to the absence of a properly enacted comprehensive zoning plan. We affirm.

## FACTS

In 1979 and 1980, Appellee Francis Moore purchased two parcels of real estate totaling approximately twenty acres. He began operating a salvage yard for motor vehicles on the property. In 1986, Francis transferred title of the tract to his son, Appellee Russell Moore. Russell continues to use the land as a salvage yard.

In July 1991, County brought suit against Moores, alleging that the operation of the salvage yard violated a County zoning ordinance. Moores contended they were not in violation of the zoning ordinance, because it was not adopted under a validly enacted comprehensive zoning plan. At trial, County stipulated that it had never adopted a comprehensive zoning plan pursuant to the procedural requirements set forth by statute. County acknowledged it did not advertise or hold a public hearing on any proposed comprehensive plan as required by SDCL 11–2–19, and the County Board of Commissioners never voted on any proposed plan as required by SDCL 11–2–20. County further acknowledged that pursuant to the provisions of SDCL 11–2–11, zoning ordinances may not be adopted or exist unless they are "adjuncts to" a "comprehensive plan."

In spite of County's failure to follow statutorily imposed procedures, it claimed that the zoning ordinance was valid and enforceable against Moores. It argued that public acquiescence and reliance on the comprehensive plan and the zoning ordinances by citizens and elected County officials for twenty-three years created a bar to Moores' challenge of the zoning ordinance.

The trial court rejected County's theory. In Conclusion of Law VI, the trial court wrote: "Public acquiescence and reliance upon the Comprehensive Plan and the zoning ordinances adopted thereunder by the citizens and elected officials for twenty-three years or so does not create a bar to [Moores'] challenge of the Ordinance and Plan." The trial court ruled County's zoning ordinances were invalid and unenforceable and, therefore, did not prevent the Moores from using their land as a salvage yard for motor vehicles.

## DECISION

WHETHER THE TRIAL COURT ERRED AS A MATTER OF LAW WHEN IT FOUND THAT PUBLIC ACQUIESCENCE AND RELIANCE UPON THE COMPREHENSIVE PLAN AND THE ZONING ORDINANCES ADOPTED THEREUNDER BY THE CITIZENS AND ELECTED OFFICIALS FOR OVER TWENTY YEARS DOES NOT CREATE A BAR TO MOORES' CHALLENGE OF THE ORDINANCE.

County claims the trial court erred as a matter of law when it concluded that public acquiescence and reliance for over twenty years did not bar Moores' challenge to the zoning ordinance. Conclusions of law are reviewed de novo. *State v. Harris*, 494 N.W.2d 619, 622 (S.D.1993); *Rusch v. Kauker*, 479 N.W.2d 496, 499 (S.D.1991).

County stresses the delay of over twenty years between County's initial attempts to enact a valid zoning ordinance and Moores' challenge to the validity of the ordinance, alleging that this "public acquiescence and reliance" for such an extended period of time makes the zoning ordinances valid in spite of procedural defects in their enactment.[1]

For a number of reasons, we reject County's claim that public acquiescence and reliance can validate ordinances which were enacted in contravention of express statutory provisions. First, "[a] county in this state is a creature of statute and has no inherent authority. It has only such powers as are expressly conferred upon it by statute and such as may be reasonably implied from those expressly granted." *State v. Hansen*, 75 S.D. 476, 478, 68 N.W.2d 480, 481 (1955) (citations omitted). Because the zoning statutes in issue [2] set forth express procedural

---

1. County refers to its public acquiescence theory in a number of ways, including laches, public reliance, and estoppel. All these terms refer to the same claim: that Moores are prevented from challenging the validity of County's zoning scheme because the public and the Moores conducted themselves as though the ordinances were valid during the extended period of their ostensibly legal operation.

2. In 1970, SDCL 11–2–11 provided in relevant part: "The county planning commission *shall* prepare, or cause to be prepared, a comprehensive plan for the county or parts thereof." 1967 S.D. Sess.L. ch. 20, § 2 (emphasis added.) The statute now reads: "The county planning commission may prepare, or cause to be prepared a comprehensive plan for the county including those municipalities within the county which are either unincorporated or which have requested by resolution of the governing board of such municipality to be included. Zoning ordinances, subdivision ordinances, the official zoning map, and other official controls as deemed necessary, *shall* be included as adjuncts to and in accordance with the comprehensive plan." SDCL 11–2–11 (emphasis added).
In 1970, SDCL 11–2–19 provided in pertinent part: "After receiving the proposed comprehensive plan drafted by the planning commission which plan shall include official controls, the board of county commissioners ... *shall* direct the County Auditor to publish once a week for three successive weeks in a newspaper of general circulation in the area affected, a notice of hearing, the time and place when and where such hearing shall be held, and a notice that all interested persons may appear and be heard." 1967 S.D.Sess.L. ch. 20, § 4 (emphasis added). This statute now provides: "After receiving the proposed comprehensive plan drafted by the planning commission, which includes proposed official controls, the board of county commissioners *shall* direct the county auditor to publish once a week for at least two successive weeks in a newspaper of general circulation in the area affected, a notice of hearing, the time and place when the hearing will be held, and a notice that all interested persons may appear and be heard." SDCL 11–2–19 (emphasis added).
In 1970, SDCL 11–2–20 was amended to provide: "Based on the results of the hearing or hearings, the adoption of the comprehensive plan or any part amendment or additions, *shall* be by resolution carried by the affirmative votes of not less than a majority of all the members of the board of county commissioners." 1970 S.D. Sess.L. ch. 84, § 1. SDCL 11–2–20 now provides: "Based on the results of the hearing or hearings, the action upon the comprehensive

requirements with which the County failed to comply, there is no legal basis for concluding that County may enforce these improperly enacted ordinances.

Second, South Dakota case law establishes that improperly adopted zoning regulations are invalid and will not be enforced. In *City of Brookings v. Martinson*, 61 S.D. 168, 246 N.W. 916 (1933), this Court ruled that, where a statute required a zoning regulation be enacted by ordinance, enactment by resolution would render the regulation invalid. In so holding, we refused to enjoin the erection and operation of a filling station where the site of the station violated an improperly enacted zoning regulation. *Id.* at 917.

In *Dodds v. Bickle*, 77 S.D. 54, 85 N.W.2d 284 (1957), residential landowners sought to enjoin a truck repair shop located in a neighborhood zoned for residential use. A South Dakota statute required publication of the time and place for the adoption of zoning ordinances, and the city had failed to publish any such notice when enacting the relevant zoning ordinances. *Id.* at 286–87. This Court affirmed the trial court's denial of injunctive relief on the grounds that the city zoning ordinances were invalid and illegal due to failure to comply with statutory notice requirements. *Id.* at 287. Importantly, this Court rejected the claim that the repair shop owner was estopped from questioning the validity of the ordinance; the Court implied that estoppel was not established where the shop owner simply applied for and received building permits to construct his shop and secured passage of a spot zoning ordinance to exempt his property from the operation of city zoning ordinances. *Id.* at 287–88.

Finally, in *Save Centennial Valley Ass'n, Inc. v. Schultz*, 284 N.W.2d 452, 457 (S.D. 1979), this Court ruled that a board of county commissioners may not disregard the clear intent of a comprehensive zoning plan in allowing a residential subdivision to be located in an agricultural zone. In arriving at this decision, we emphasized the binding force of statutes which set out procedural mandates for the adoption of zoning regulations:

> [T]he power to decide matters of zoning, which by necessity may include the power to exercise discretion, is not synonymous with the power to disregard the mandates of the enabling legislation and the comprehensive plan.... Both the enabling legislation and the comprehensive plan are specific in setting out the procedures to be followed to effectuate a change in the comprehensive plan. Both require notice and hearing prior to the acceptance of any change. *These provisions are mandatory and may not be disregarded by the Commission.* Any action by the Commission in attempting to allow the subdivision to be located in the agricultural zone which does not comply with the legislative mandates is an act in excess of its jurisdiction.

*Id.* at 457–58 (emphasis supplied) (citations omitted).

Third, we must consider the due process concerns associated with ordinances affecting property rights. As explained in *Carter v. City of Salina*, 773 F.2d 251 (10th Cir.1985):

> It is the general rule that zoning ordinances are in derogation of common-law property rights and find their authority through the state police power; accordingly, municipalities and other political subdivisions must scrupulously comply with statutory requirements, including notice and hearing, in order to provide due process of law. Ordinances which fail to comply with the state enabling statutes requiring notice and hearing are *void....* Such procedural infirmities cannot be overlooked and the fact that such an ordinance has been "on the books" and in effect for a long period of time does not instill life into an ordinance which was void at its inception.

*Id.* at 254 (emphasis in original) (citations omitted). *See also Catalano v. Pemberton Township Bd. of Adjustment*, 60 N.J.Super. 82, 158 A.2d 403, 410 (1960) (where zoning ordinance was enacted in violation of statutory procedures, defenses of estoppel and lach-

plan or any part, adjunct, amendment or additions, *shall* be by resolution or ordinance, as appropriate, carried by the affirmative votes of not less than a majority of all the members of the board of county commissioners." (Emphasis added.)

es cannot be invoked to give vitality to an ordinance that never came into legal being).

Further, we cannot conclude that Moores deliberately delayed bringing their challenge in order to prejudice the rights of County or the public. The procedural defect here is the absence of notice and a public hearing as contemplated by the statutes mandating a comprehensive plan. This is the type of defect that inherently leads to delay in the bringing of a challenge. *Pilgrim v. City of Winona*, 256 N.W.2d 266, 270 (Minn.1977). Additionally, Moores promptly asserted the invalidity of the ordinance immediately after County brought suit to restrain their operation of an existing automobile salvage yard. Consequently, "the validity of this ordinance was not a matter of concern to [Moores] until such time as it affected [their] legal rights. When it did so affect them, [they] properly placed the validity of the ordinance in issue." *Catalano*, 158 A.2d at 410. *See also Pilgrim*, 256 N.W.2d at 270 (The legislature, in establishing a detailed procedure for enacting valid ordinances, "intended that the rights of landowners would be protected from arbitrary or detrimental zoning by the public hearing process. Only in those cases where it is clear that a landowner has 'sat on his rights' should he be estopped from challenging a zoning ordinance passed without public hearing.")

We agree with the trial court that, inasmuch as County's zoning ordinances are void for want of compliance with mandatory notice and hearing requirements, Moores' property is unzoned. Absent other applicable law which restricts the use of their land, they may proceed with their use of the property as an auto salvage yard.[3]

Affirmed.

WUEST, SABERS, AMUNDSON and KONENKAMP, JJ., concur.

---

**3.** We recognize the uncertainty and possible chaos that might accompany invalidation of the County's existing zoning scheme. We note, however, that South Dakota law allows for temporary zoning and land use controls when a comprehensive plan or official controls are under consideration. SDCL 11–2–10. A moratorium is one category of interim development controls contemplated by this statute. *See* Patrick J. Rohan, *Zoning and Land Use Controls*, § 4.03[2][a] (1994); SDCL 11–2–10. In enacting any temporary controls, the County must comply with all statutory mandates, including the notice and hearing requirements set forth in SDCL 11–2–10.

The anticipated brief time period between the issuance of this decision and the lawful enactment of temporary measures is unlikely to pose a threat of uncontrolled, opportunistic development. First, to establish a vested nonconforming use which falls outside of subsequently enacted zoning laws, the use must be actual and not merely contemplated. Patrick J. Rohan, *Zoning and Land Use Controls*, § 41.01[5] (1994). Second, a vested right will not be established where expenditures or obligations are incurred in contemplation of impending zoning restrictions. *Id.* at §§ 22.04[1]; 41.01[5]; 41.02[4] (citing *County Council for Montgomery County v. District Land Corp.*, 274 Md. 691, 337 A.2d 712 (Ct.App.1975); *Aberman v. City of New Kensington*, 377 Pa. 520, 105 A.2d 586 (1954); *Hollywood v. Hollywood Beach Hotel*, 283 So.2d 867 (Fla.Dist.Ct.App. 1973)). Third, a zoning authority may informally freeze use of the land by denying building permits or by refusing to act on permit applications until a comprehensive plan and zoning ordinances have been approved. *Id.* at § 22.02[3]. Such informal measures have succeeded where the zoning authority acts in good faith to promote the general welfare and the freeze is not improperly directed at a particular building permit applicant. *Id.*