#29463-a-SPM
**2022 S.D. 63**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

JON LITTLE AND SHIRLEY LITTLE
AND CLARICE LITTLE,                              Plaintiffs and Appellants,

v.

HANSON COUNTY DRAINAGE BOARD,
HANSON COUNTY, SOUTH DAKOTA,                     Defendant and Appellee,

and

JAMES F. PAULSON,                                Defendant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE FIRST JUDICIAL CIRCUIT
HANSON COUNTY, SOUTH DAKOTA

* * * *

THE HONORABLE CHRIS S. GILES
Judge

* * * *

CHRIS A. NIPE of
Larson and Nipe
Mitchell, South Dakota                           Attorneys for plaintiffs
                                                 and appellants.

MIKE C. FINK
Hanson County Deputy State's Attorney
Bridgewater, South Dakota                        Attorneys for defendant and
                                                 appellee.

* * * *

ARGUED
AUGUST 24, 2021
OPINION FILED **10/26/22**

#29463

MYREN, Justice

[¶1.] The Littles[1] appealed to the circuit court a decision by the Hanson County Drainage Board (Board) granting a drainage permit to James F. Paulson.[2] The permit application sought to clean out a pre-existing ditch. The Littles claim the Board failed to follow the approval procedures outlined in its ordinances and South Dakota statutes. The circuit court affirmed the Board's decision. The Littles now appeal to this Court, raising the additional issues that the circuit court failed to admit relevant testimony and failed to take judicial notice of a prior proceeding involving the parties. We affirm.

**Facts and Procedural History**

[¶2.] In May 2020, Paulson applied for a drainage permit (application) with the Board under Hanson County's Drainage Ordinance (ordinances) § 2.01.[3] In the application, Paulson sought to remove approximately 2.5 feet of debris that had collected in a ditch located in a township road's right-of-way. The clean-out of the

---

1. The Littles refers to Jon, Shirley, and Clarice Little who filed the complaint against the Board.

2. This Court ordered supplemental briefing to determine whether the circuit court had authority to hear an appeal directly from the Hanson County Drainage Board. The Hanson County Drainage Ordinance at Article 7.01(2) defines the Hanson County Drainage Board as the Hanson County Commission. Both parties agreed that this case involves an appeal to the circuit court from a decision of the board of county commissioners under SDCL 7-8-27. *See Carmody v. Lake Cnty. Bd. of Comm'rs*, 2020 S.D. 3, ¶¶ 1, 19, 938 N.W.2d 433, 435, 439 (reviewing a circuit court's decision from an appeal under SDCL 7-8-27 of a drainage permit granted by a board of commissioners sitting as a drainage board).

3. Section 2.01 states, "[a] drainage permit is required prior to commencing the excavation for, or the construction or installation of, a drainage project[.]"

ditch would return it to its pre-existing, natural state. In compliance with § 2.02 of the ordinances, the application identified the land to be drained, the area of drainage, the outlet's location, a description of the project, and included consent from the downstream landowner. It also included two signatures from members of the Spring Lake Township Board of Supervisors (Township), granting the Township's approval of the permit. The Township's approval was necessary because § 2.02 of the ordinances required "written approval of the governing agency for any drainage into a road right-of-way[.]" The Township is the governing agency regarding the right-of-way at issue. Paulson also attached a statement detailing what occurred at the Township's special meeting on May 6, 2020. It stated that the Township discussed Paulson's request to receive the drainage permit at issue here and the separate issue of Paulson's removal of a driveway and culvert without replacement. The statement was signed by the Township's chairman and clerk and indicated that the Township considered the requested permit.

[¶3.] Regarding the permit request for debris removal, the Board published notice of a public meeting in a Hanson County newspaper on May 28, 2020, and June 4, 2020. The notice informed the public that the Board was to hold a hearing on the application on June 16, 2020. Under § 2.07 of the ordinances, "[a]t the County's direction, the applicant shall prominently post the property in a manner most visible to the nearest public right-of-way, giving notice for the permit

hearing."[4]  The Board did not direct Paulson to "post" a notice of the meeting on the property.

[¶4.]        The Board considered Paulson's application on June 16, 2020 (June meeting).  Paulson, Jon Little, Shirley Little, and the Littles' legal counsel were present.  Paulson presented information on the application, and the Littles objected to the application.  The Board tabled the application to seek advice from its attorney about whether the application needed additional signatures.  The Board did not indicate at that meeting when it would continue its consideration of the application.

[¶5.]        Paulson's application was placed on the agenda for the July 7, 2020, board meeting (July meeting).  The Hanson County auditor emailed the Littles' counsel notifying him of the July meeting more than 24 hours before that meeting.  She also posted the meeting's agenda online.  Minutes from the July meeting indicate that Paulson presented information on the application, including the nature and the extent of the project.  At the meeting, the Littles' counsel appeared

---

4.    Section 2.07 provides:

> For all hearings required pursuant to this article, the County will, at the applicant's expense, publish notice in the County legal newspaper once a week for two consecutive weeks.  The final published notice must be published not more than 15 days, or less than 5 days, before the date set for the hearing.  At the County's direction, the applicant shall prominently post the property in a manner most visible to the nearest public right-of-way, giving notice for the permit hearing.  The County will also give notice, at the applicant's expense . . . not more than 30 days nor less than ten days from the date set for hearing to . . . [a]ny person who has notified the County in writing of the person's objection to the drainage project proposed, and who has requested, in writing notification of the hearing on the drainage project proposed.

and opposed the application, but the Littles were not personally present. The meeting minutes do not indicate that Littles' counsel raised concerns about notice for the hearing or that counsel requested a postponement so that his clients could attend.

[¶6.] According to the minutes, "[t]he Board first determined that the application was submitted by the proper party and that the application include[d] the appropriate Township and landowner consent." The minutes indicate that the Board read aloud the factors from § 2.09 of the ordinances and, after considering the input of those in attendance, made specific findings regarding the application. The findings paralleled the factors in § 2.09 of the ordinances. Based on its findings, the Board unanimously approved the application.

[¶7.] Following the approval of the application, the Littles filed a complaint in circuit court, alleging that the Board violated its ordinances and various state statutes. The Littles claimed the *Township* failed to post notice of its meeting, so its approval of the permit was invalid. They further argued that because the *Board* failed to publish notice of the July meeting and failed to require Paulson to post a notice on his property, its approval of the permit was invalid. The Littles also argued that the application was incomplete because it did not reference the driveway and culvert that Paulson had previously removed.

[¶8.] The Board responded that the Township, not the Board, controls the ditch where the culvert and driveway were located, and therefore, the removal of the culvert and driveway held no relevance to the current proceeding. Additionally, the Board contended that it had no obligation to investigate whether the Township

complied with the Township's approval procedures. The Board noted that it satisfied its notice requirements; specifically, it published notice of the June meeting, the Littles' counsel received personal notice of the continued July meeting, and the Board had elected not to require Paulson to post a notice on the property. The circuit court initially determined that the Board committed no procedural errors and that the Board was entitled to rely on the validity of the Township's approval process. It also noted that the Littles should have taken their concerns about the Township's approval process before the Township.

[¶9.]       The Littles then made an offer of proof regarding the Township's approval process. The Township's clerk testified that the Township held a meeting to approve the permit, but it did not post any notice about the meeting, and, to his knowledge, the Township did not publish the minutes from the meeting. After hearing the offer of proof, the court again ruled that this testimony was not relevant because the Board could take the Township's authorization at face value.

[¶10.]      The circuit court took evidence and heard arguments regarding whether the Board's decision was an abuse of discretion. The Littles asked the court to take judicial notice of a prior court proceeding involving an earlier drainage application filed by Paulson (2019 proceeding) about the driveway and culvert removal and sought to admit a transcript from the court hearing in that prior proceeding.[5] The Board objected, arguing the information from the 2019 proceeding

---

5.    In the 2019 proceeding, the circuit court remanded the matter back to the Board after determining that the Board did not follow the county ordinances in approving the drainage permit. The circuit court also found Paulson's drainage permit application to be deficient and directed him to clarify the

(continued . . .)

was not presented to the Board during its decision-making process on the current application.

[¶11.]     The circuit court rejected the judicial notice request, noting that the 2019 proceeding involved a separate application and indicated that "we need to stick to what was presented to them in June, at the June 16th meeting, and matters presented to them at the July 7th meeting." Despite this ruling, the circuit court allowed Jon Little to testify, over the Board's objection, that Paulson had removed the driveway and culvert before he submitted his first drainage application, and the removal of those items affected the ditch's drainage. The Littles then argued that the Board abused its discretion by approving the drainage permit when it had clear knowledge, based upon the 2019 proceeding, that the permit violated its ordinances due to Paulson's prior improper removal of the culvert and driveway. The Board countered, arguing that it did not abuse its discretion because it followed the ordinances and reached its decision based on the evidence presented.

[¶12.]     In its findings of fact and conclusions of law, the circuit court determined that because the Board did not direct Paulson to post notice of the meeting on his property, this was not required by the applicable ordinance. The circuit court also found that the Hanson County auditor notified the Littles' counsel more than 24 hours before the continued hearing in July, and the Littles' counsel appeared at the hearing and did not request a postponement. It concluded that the

_____

(. . . continued)
description of what he was requesting the Board to approve. The circuit court further noted that the Township needed to consent to the permit through an official action.

Board followed the procedures required in its ordinances and by State statute. The court determined that the Board did not have "an obligation to make further inquiry into whether or not the [T]ownship proceeded properly on giving permission" for the drainage project. The circuit court concluded that the Board did not abuse its discretion by granting the permit. The Littles appeal and raise five issues, which we condense and restate.

## Analysis and Decision

### 1. Whether the Board complied with the proper procedures for approving the permit.

[¶13.] As both parties note, we review a board's decision to grant or deny a drainage permit under an abuse of discretion standard. *See Carmody*, 2020 S.D. 3, ¶ 29, 938 N.W.2d at 442. "An abuse of discretion 'is a fundamental error of judgment, a choice outside the range of permissible choices, a decision, which, on full consideration, is arbitrary or unreasonable.'" *MacKaben v. MacKaben*, 2015 S.D. 86, ¶ 9, 871 N.W.2d 617, 622 (quoting *Gartner v. Temple*, 2014 S.D. 74, ¶ 7, 855 N.W.2d 846, 850). The burden of proof on appeal is on the party challenging the decision made by the board. *See Carmody*, 2020 S.D. 3, ¶ 29, 938 N.W.2d at 442.

[¶14.] The Littles make various claims that the Board violated its ordinances and State statutes in granting Paulson's permit. Specifically, they claim the Township's consent to the permit was invalid, the Board failed to investigate the Township's consent, the Board violated its public notice ordinance, and the Board did not require Paulson's application to remedy his alleged prior violation of removing the culvert and driveway. They also argue that the Board's alleged errors violated their right to due process.

-7-

*Township's Consent*

[¶15.]     The Littles allege that the Township's consent to the permit was invalid because it did not comply with SDCL 1-25-1.1[6] by providing public notice of the meeting where it considered the application.  They also allege that the Township violated SDCL 8-5-1, the statute governing when and where a Township should hold a regular meeting.[7]  Because of these violations, the Littles claim the Township's consent to the permit was void, making the Board's decision to grant the permit invalid.

[¶16.]     The matter before this Court is an action against the Hanson County Drainage Board, not the Spring Lake Township Board of Supervisors.  The Hanson County Drainage Board and the Spring Lake Township Board of Supervisors are different political entities with different powers granted by the Legislature.

---

6.     SDCL 1-25-1.1 provides:

> Each political subdivision shall provide public notice, with proposed agenda, that is visible, readable, and accessible for at least an entire, continuous twenty-four hours immediately preceding any official meeting, by posting a copy of the notice, visible to the public, at the principal office of the political subdivision holding the meeting.  The proposed agenda shall include the date, time, and location of the meeting.  The notice shall also be posted on the political subdivision's website upon dissemination of the notice, if a website exists.  For any special . . . meeting, the information in the notice shall be delivered in person, by mail, by email, or by telephone, to members of the local news media who have requested notice.  For any special . . . meeting, each political subdivision shall also comply with the public notice provisions of this section for a regular meeting to the extent that circumstances permit. . . .

7.     SDCL 8-5-1 governs the procedures for *regular* meetings.  As the letter from the Township's meeting notes, the meeting to consider the permit was a *special* meeting.  Therefore, SDCL 8-3-3 to -5 governed that meeting.

#29463

Although a township's authority may sometimes be subordinate to a county's authority, the entities remain separate. *See* SDCL 8-2-9; *see also Welsh v. Centerville Twp.*, 1999 S.D. 73, 595 N.W.2d 622 (discussing a conflict between a township's and a county's respective regulatory authority). Accordingly, the action now before this Court is not the appropriate avenue to invalidate the Township's consent to the permit based on the alleged violation of the Township's special meeting notice requirements.

[¶17.]     Contrary to the Littles' claim, they had an appeal avenue to raise any alleged violation of the Township's special meeting notice requirements under SDCL 8-3-4.[8]  SDCL 8-5-8 provides a statutory right of appeal "[f]rom all decisions, orders, and resolutions of the boards of supervisors of townships[.]"  Further, SDCL 8-5-8 provides that if a township fails to publish a decision, an aggrieved person may appeal the decision within twenty days of receiving actual notice of the decision, and SDCL 8-5-10 permits the circuit court to hear the matter.  Upon notification of the Township's consent, the Littles could have directly appealed this decision and raised its notice concerns to the circuit court.  The Littles cannot collaterally attack the Township's consent in the current proceeding before the

---

8.     SDCL 8-3-4 provides:

> Every township clerk with whom such statement is filed as required in § 8-3-3 shall record the same and immediately cause notice to be published in the same manner as provided for the publication of notice of the annual township meeting.  However, in a township with a population of twenty or fewer resident voters, the notice of the time and place of any special meeting need not be published more than once in any publication, shall be provided not less than three days before the special meeting, and may be provided by first class mail in lieu of publication.

-9-

Board.  Even if the Township failed to provide proper notice, the Board had no authority to declare the Township's consent void.

*Board's Investigation of Township's Consent*

[¶18.]     Because the Township's consent was a condition precedent to the Board's permit approval, the Littles claim the Board abused its discretion in granting the permit without first investigating the validity of this condition precedent.

[¶19.]     Section 2.02 of the ordinances requires an individual seeking a drainage permit to submit an application which must include, among other information, the township's "written approval" of the permit.  When presented with the application, the Board must evaluate a set of factors to determine whether it should grant the permit.  *See* Hanson County Drainage Ordinances § 2.09.  The ordinances require the Board to examine the application and determine whether a township provided written approval.  However, the ordinances do not require the Board to investigate or verify that a township, when granting its approval, complied with the township's public notice requirements.

[¶20.]     Here, the Board complied with its duties.  Paulson presented an application that contained approval signatures from two of the Township's board members and a letter signed by the Township's clerk and chairman stating that the Township held a special meeting to consider the permit.  The Board elected to table the discussion on the application at the June meeting to seek advice from its attorney.  At the continued meeting in July, the Board "determined that the

application . . . include[d] the appropriate Township . . . consent." The circuit court correctly determined the Board did not violate its procedures.

*Board's Public Notice Ordinances*

[¶21.]     The Littles next contend that the Board violated § 2.07 of the ordinances by not publishing notice of the July meeting, and as a result, they could not attend the meeting. They also argue that the Board violated § 2.07 by failing to direct Paulson to post notice on the property.

[¶22.]     It is undisputed that the Board complied with the publication notice requirements set forth in § 2.07 for the June meeting. The Littles appeared with their legal counsel at the June meeting and objected to Paulson's application. The Hanson County auditor provided notice to the Littles' legal counsel at least 24 hours before the July meeting. The Littles' counsel appeared at the July meeting and continued the Littles' objections to the proposed project. However, the record does not show that the Littles' counsel objected to the adequacy of the notice or requested a continuance so that his clients could appear.

[¶23.]     We discussed a similar issue regarding whether a commission provided the public with proper notice for an amendment to a zoning ordinance in *Abata v. Pennington Cnty. Bd. of Comm'rs*, 2019 S.D. 39, ¶ 7, 931 N.W.2d 714, 718. In *Abata*, the commission published proper notice for the initial hearing on the amendment, but during that initial hearing, the commission decided to continue the matter to subsequent hearings. *Id.* ¶ 3, 931 N.W.2d at 717. The commission did not publish notice for the continued hearings. *Id.* As a result, citizens claimed the approved amendment was void due to the commission's failure to provide proper

statutory notice. *Id.* ¶ 7, 931 N.W.2d at 718. The circuit court ruled in favor of the citizens and determined that the amendment was void because the statute required the commission to publish notice for each of the hearings (relying on the fact that "hearings" is plural), and the commission did not provide legal notice for the continued hearing dates. *Id.* ¶ 20, 931 N.W.2d at 721. This Court reversed and, by interpreting the relevant notice statutes, determined that the commission did not need to provide new notice for each continued hearing but only for the one hearing the statute required. *Id.* ¶ 23, 931 N.W.2d at 722.

[¶24.] Here, § 2.07 provides that "[f]or all hearings *required* pursuant to this article, the County will . . . publish notice[.]" (Emphasis added.) The ordinances only require *a* public hearing for: *the appeal* of an administrative decision on a drainage permit (§ 2.06); applications determined to be of statewide or inter-county significance (§ 2.08); and a drainage complaint (§ 3.03). Although the ordinances do not specifically require a public hearing before the approval of an application for a drainage permit, SDCL 46A-10A-39 states a "board or commission shall hold *a* public hearing, subject to the requirements of § 46A-10A-22," on an individual's petition to change their property's drainage restrictions. (Emphasis added.) SDCL 46A-10A-22 requires the board or commission to publish the notice at least once a week for at least two successive weeks. SDCL 46A-10A-39 also requires the board or commission to "take action upon the petition within forty-five days of receipt . . . of any such petition."

[¶25.] Like the language in the governing statutes in *Abata*, this statute only requires the Board to hold one public hearing on the application. According to the

ordinances, the Board must publish notice for that hearing, which it did by publishing notice for the June meeting. At the properly noticed June meeting, the Board discussed the application and provided the public an opportunity to present objections. Additionally, the Board published notice by complying with the open-meeting requirements of SDCL 1-25-1.1 by posting the agendas for both the June and July meetings at least 24 hours before their commencement, and both agendas included an entry related to the application. The affected landowners had "the opportunity to formally voice their concerns and present evidence in opposition to [the] opposed measure[ ]," and the meeting provided "an avenue for expression of public opinion." *Abata*, 2019 S.D. 39, ¶ 25, 931 N.W.2d at 723 (alterations added) (quoting *Wedel v. Beadle Cnty. Comm'n*, 2016 S.D. 59, ¶ 14, 884 N.W.2d 755, 759). "Because only one hearing is required by statute before each governmental body, those who do not attend the advertised hearing risk not having their voices heard." *Abata*, 2019 S.D. 39, ¶ 25, 931 N.W.2d at 723. "Requiring legal notice for each continued hearing would significantly extend the amount of time to resolve controversial issues" and potentially deter boards from continuing meetings, "which would have the effect of suppressing the time allotted to the expression of public opinion." *Id.* ¶ 26, 931 N.W.2d at 723. The circuit court correctly concluded that the Board complied with its notice requirements.

[¶26.] The Littles additionally claim that the Board violated § 2.07 by failing to require Paulson to post a notice on his property. Section 2.07 provides: "*At the county's direction*, the applicant shall prominently post the property in a manner most visible to the nearest public right-of-way, giving notice for the permit hearing."

(Emphasis added.) "When interpreting an ordinance, we must assume that the legislative body meant what the ordinance says and give its words and phrases plain meaning and effect." *In re Approval of Request for Amend. to Frawley Planned Unit Dev.*, 2002 S.D. 2, ¶ 6, 638 N.W.2d 552, 554 (quoting *Cole v. Bd. of Adjustment of the City of Huron*, 1999 S.D. 54, ¶ 4, 592 N.W.2d 175, 176). The ordinance's plain language requires individuals to post a notice on their property if the Board directs them to do so. The ordinance does not include mandatory language requiring the Board to direct the individual to post the notice. The Board's authority to require Paulson to post notice was discretionary, and it did not abuse that discretion by not exercising its authority.

*Due Process*

[¶27.]     As discussed above, the Board complied with the relevant South Dakota statutes and county ordinances. As a result, the Littles received due process. But even if procedural errors occurred, "proof of prejudice is generally a necessary . . . element of a due process claim[.]" *State, Dep't of Game, Fish & Parks v. Troy Twp., Day Cnty.*, 2017 S.D. 50, ¶ 46, 900 N.W.2d 840, 857 (alterations in original) (quoting *State v. Stock*, 361 N.W.2d 280, 283 (S.D. 1985)). Here, the Littles fail to establish any actual prejudice resulting from the Board's alleged procedural failures. Their claimed prejudice is not based upon lack of proper notice to the public. Instead, it is a claim of personal prejudice that the Board's lack of notice caused them to be absent from the continued meeting. The Littles' counsel received actual notice before the July meeting, attended the meeting, presented the Littles' objections to the application, raised no concerns about the adequacy of notice, and

did not request a continuance of the meeting to present additional information or to allow the Littles to be present. Further, the Littles were present at the June meeting, where they personally presented their objections. The Littles failed to establish that the alleged violations caused any prejudice.[9]

*Removal of Culvert and Driveway*

[¶28.] The Littles further argue that the Board abused its discretion by not considering Paulson's alleged prior violations discussed in the 2019 proceeding—removing the driveway and culvert without authorization. They claim the Board should have required Paulson's application to include a request to remedy these alleged violations.

[¶29.] Paulson's application does not refer to the culvert or driveway; instead, it only seeks permission to clean out debris from a pre-existing ditch. But even if the prior removal of the culvert or driveway had some impact on the drainage application before the Board, the Township has governing authority over the road right-of-way, including the ditch. The Township's statement indicates that it considered Paulson's request to remove debris from the ditch and "remove the current driveway and culvert without replacement." The Township—as the body with jurisdiction over the ditch—approved both requests. Given the Township's

---

9. We are mindful of the Court's holding in *Abata*, which stated that the plaintiffs had not waived their due process objections to a commission's enactment of a zoning regulation by being present and being heard at the meetings. 2019 S.D. 39, ¶ 17, 931 N.W.2d at 721. Today, our discussion of the Littles' participation in the hearings addresses the question of prejudice as opposed to a waiver of their due process claim.

consent, we cannot say the Board abused its discretion in approving the drainage permit.

### 2. Whether the circuit court erred by denying the Littles' request to present additional testimony.

[¶30.] The Littles contend that the circuit court erred by not permitting them to present evidence that they allege would establish that the Township's consent to the permit was invalid due to a failure to post public notice of the special meeting and to publish the minutes from the meeting.

[¶31.] "Questions of the relevance of proffered testimony are committed to the discretion of the trial court and this [C]ourt will not reverse its ruling absent an abuse of discretion." *State v. Olson*, 408 N.W.2d 748, 752 (S.D. 1987). "Proffered evidence is relevant under our rules if: (a) It has any tendency to make a fact more or less probable than it would be without the evidence; and (b) The fact is of consequence in determining the action." *In re E.T.*, 2019 S.D. 23, ¶ 18, 932 N.W.2d 770, 774 (quoting SDCL 19-19-401).

[¶32.] Hanson County Drainage Ordinance § 2.02 states, "[t]he applicant must obtain written approval of the governing agency for any drainage into a road right-of-way[.]" The record before the Board established that Paulson had received the Township's written approval. As discussed earlier, the Board had no obligation to verify that the Township had complied with its notice requirements before issuing its approval. Therefore, whether the evidence would establish the Township failed to provide notice is not a fact of consequence in determining whether the Board complied with its ordinances in granting the permit. Accordingly, the circuit court did not abuse its discretion by denying the admission of this testimony.

### 3. Whether the circuit court erred by denying the Littles' request to take judicial notice of the 2019 proceeding.

[¶33.] The Littles argue that the circuit court erred by failing to take judicial notice of the 2019 proceeding. They claim that the record of the prior proceeding established that Paulson removed a driveway and culvert from the drainage ditch without obtaining a permit. In their view, the prior proceeding was relevant to whether the Board abused its discretion in granting the permit without first inquiring into the propriety of the Township's consent. In particular, the Littles assert that the record of the prior proceeding established that the Board was aware that Paulson had removed a driveway and culvert from the drainage ditch without obtaining a permit, and that the circuit court had found that the process utilized by Paulson to get approval from the Township was flawed. They thus contend that the Board should have required Paulson to remedy the prior improper removal of the culvert and the driveway by reinstalling them before accepting the Township's consent and approving Paulson's current application.

[¶34.] A circuit court's denial of a request to take judicial notice is reviewed under an abuse of discretion. *See In re Dorsey & Whitney Tr. Co. LLC*, 2001 S.D. 35, ¶ 19, 623 N.W.2d 468, 474. SDCL 19-19-201(b)(2) provides that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . [c]an be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." However, "[t]he right to take judicial notice of . . . [a] record, or other fact which may be considered properly by the court or jury, does not mean that any such judicially noticeable matter is [a]dmissible in evidence."

*Mendenhall v. Swanson*, 2017 S.D. 2, ¶ 12 n.4, 889 N.W.2d 416, 420 n.4 (second alteration added) (quoting *Winekoff v. Pospisil*, 181 N.W.2d 897, 899–900 (Mich. 1970)).  "[A] fact judicially noticed must be relevant and may not violate exclusionary rules of evidence."  *Mendenhall*, 2017 S.D. 2, ¶ 12 n.4, 889 N.W.2d at 420 n.4.

[¶35.]      As discussed earlier, the circuit court correctly determined that questions regarding the Township's compliance with its notice requirements were not properly before the court, and the Board was not required to examine the validity of the Township's consent.  Therefore, the circuit court did not abuse its discretion in declining to take judicial notice of the 2019 proceeding.

[¶36.]      We affirm the circuit court's decision upholding the Board's approval of Paulson's application for a drainage permit.

[¶37.]      JENSEN, Chief Justice, and KERN, SALTER, and DEVANEY, Justices, concur.